UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
DERVEN SMITH, :
:
:
Plaintiff, :
: 04 Civ. 2866 (GEL)
-against- :
: **OPINION AND ORDER**
CROWN LIFT TRUCKS, :
:
Defendant. :
:
------------------------------------------------------------x

Edmond C. Chakmakian, Hauppauge, New York, for plaintiff.

J. Joseph Bainton, Bainton McCarthy LLC, New York, New York, for defendant.

GERARD E. LYNCH, District Judge:

     Plaintiff Derven Smith brought this negligence action against Crown Lift Trucks, also known as Crown Equipment Corporation ("Crown"), contending that his injury in a forklift accident was due to Crown's negligence. The case was tried to a jury beginning on January 16, 2007, and on January 22, 2007, the jury returned a verdict for plaintiff in the amount of $1,040,664.49. Defendant now moves for judgment as a matter of law or, in the alternative, a new trial, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

     Crown wisely does not challenge the jury's finding of its negligence. The jury could reasonably have found, by crediting the testimony of witness Thomas Leoce, a Crown employee at the time of the accident, that Leoce had deactivated the brakes of the fork lift and left it on the work floor of the warehouse where plaintiff was employed there without telling anyone at the warehouse that the machine was now brakeless (Tr. 142) — and that he later altered his report,

on the instructions of his superior, to falsely indicate that he had warned the customer of the defect. (Tr. 146.) Instead, Crown seeks to avoid responsibility for the accident that predictably resulted by challenging the jury's verdict on proximate cause and on plaintiff's negligence, and by arguing that certain testimony relevant to damages should have been excluded. Crown also argues that the jury's award should be reduced. These arguments, with the exception of the last, are without merit.

I. **Standards for Judgment as a Matter of Law Under Rule 50(b)**

In ruling on a post-verdict motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), district courts must "consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that the jury might have drawn in its favor." Madeira v. Affordable Housing Foundation, Inc., 469 F.3d 219, 227 (2d Cir. 2006). The court cannot itself "assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). Judgment as a matter of law should be granted "only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party." Madeira, 469 F.3d at 227 (internal citations, alterations and quotation marks omitted). To the extent a party moves for a new trial, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of

justice." Tesser v. Bd. of Educ., 370 F.3d 314, 320 (2d Cir. 2004) (internal quotation marks omitted).

## II.     **Physical Impossibility of the Accident**

First, Crown renews the argument it made to the jury that the accident as described by plaintiff was physically impossible, and that any negligence by Crown could not, as a matter of law, have caused Smith's injury, because Smith could not possibly have correctly attempted to use the defective brake. Crown attempts to prove that the brake was not activated by the following chain of inference.

If Smith's right foot was on the floor of the operator's compartment, Crown contends, the fork of the oncoming forklift could not have collided with Smith's right foot without also striking his left foot or the brake pedal of the forklift. (If the right foot is on the right pedal, it would be blocked from the incoming fork by either the left foot depressing the left pedal, or the left pedal, which sticks up if not depressed.) Thus, Crown argues, the injuries to Smith's right foot could only have occurred if the right foot was raised. (D. Reply. 3.) If the right foot was raised, Crown contends, then the brakes could not have been applied. The brake is applied by lifting the left foot off the brake pedal; if the right foot was raised (as Crown contends it must have been), then the left foot must have been flat on the brake pedal, because "a person has to stand on at least one of two legs." (Id.) Thus, Crown believes it has proven that the brake was never applied, which would mean that the failure of the brake did not cause the accident.

This argument was no more persuasive to the jury than it is to the Court. The jury observed an elaborate demonstration of the operation of the lift, conducted almost entirely by defendant according to the defendant's own protocol, in an effort to prove exactly the theory of

impossibility that defendant now asserts. It was wholly within the province of the jury, which had a full opportunity to observe the relevant machines in operation that cannot be duplicated on a cold record, to assess this argument, and the jury rejected it. If the case had been tried to the bench, the Court would have reached the same result.

First, Crown's argument was not supported by any competent expert testimony. Crown called no accident reconstruction expert or neutral forklift engineer to support its impossibility theory. Instead, the claim of impossibility was entirely a speculative creature of defense counsel's summation, founded only on the forklift demonstration arranged by defendant, and on the testimony of Ron Brewer, a Crown employee, on the general design and operation of forklifts. Brewer was asked to opine on whether the incoming fork could have hit Smith's lowered right foot if the left foot was raised, but he was never asked to opine on the general plausibility of plaintiff's theory of the accident.

Second, Crown's hypothetical reconstruction of the accident imagines a fairly static or slow-moving occurrence; in reality, people and machines move in rapid and not necessarily predictable ways. It is possible to imagine a great number of things that could have happened in the instant of the collision. Smith may, for example, have attempted to lift both legs out of the way of the approaching forklift prongs by bracing his arms on the edge of the operator's compartment, which would lift both feet above the pedals and into the path of the forklift prongs. Smith could have done so in the split-second during which the accident occurred, after a correct attempt to apply the useless brakes. Even if Crown is correct that the brake was not *being applied* at the moment of the accident, Smith might well have tried to apply it shortly before the instant of the crash. A reasonable jury could well have accepted defendant's proposed chain of

inferences, but it was surely not required to. In light of the Court's observations of the equipment, as demonstrated by Crown's employee, Crown's argument that it was impossible that the faulty brake could have caused the accident is eminently unpersuasive.

### III.     Plaintiff's Alleged Negligence

Crown's second argument is that the jury's decision to find no negligence on the part of plaintiff is against the weight of the evidence. Crown contends that it was negligent for plaintiff to operate the forklift at all without formal training, given that a warning label on the truck advised that no one should operate the truck "unless you are trained and authorized." (D. Mem. 8.)

It was again entirely up to the jury to evaluate this argument, using its own common sense. Again, it is no surprise that they did. Plaintiff's job involved operating the forklift. He operated it hundreds of times without incident, as his job required him to do, having a mishap only when defendant's negligence left him driving a vehicle that had no brakes. The jury saw the lift truck's operation demonstrated, and could easily conclude that no very elaborate training was necessary, or at least that plaintiff could reasonably have believed that he was "trained and authorized" to use the truck since he had been informally instructed on its use and told to use it. Thus, defendant's argument is without merit.[1]

---

[1] Defendant's one-sentence argument that Smith failed to test the brakes when operating the truck is also unpersuasive, because the jury could have concluded that plaintiff tried the brakes within a very short period of starting the lift, by which time it would already have been already too late. As a witness explained, to test the brakes on a forklift, "[y]ou drive it around." (Tr. 185 (Leoce).) That's just what Smith did.

**IV.     Dr. Catanese's Testimony**

Crown argues that the jury's award for future pain and suffering should be excluded from the judgment because that award was based on erroneously admitted testimony by Dr. Dominick Catanese, plaintiff's witness. Crown argues that the testimony should have been excluded because Dr. Catanese testified without proper disclosure pursuant to Rule 26 of the Federal Rules of Civil Procedure.

Dr. Catanese, the doctor who took over as Smith's treating physician when the prior treating physician left his medical practice (Tr. 206), was first identified to defendants in February 2006, almost a year after the close of discovery. (Bainton Decl. Ex. L.) Although defendant was aware for many months prior to trial that Catanese might testify, it made no effort to discover what he planned to say.

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires disclosure of the identities of expert witnesses, as well as a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2). "It is well established that [Rule] 26(a)(2) only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve giving expert testimony." Lewis v. Triborough Bridge and Tunnel Auth., No. 97 Civ. 0607, 2001 WL 21256, at *1 (S.D.N.Y. Jan. 9, 2001). Treating physicians are not experts under the language of Rule 26, and so "[a] treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26, Advisory Committee's Note. "Thus, a treating physician may testify about opinions formed during the course of treatment without regard to the disclosure requirements of Rule 26(a)(2)."

6

Lewis, 2001 WL 21256, at *1.  See Palmieri v. Celebrity Cruise Lines, Inc., No. 98 Civ.2037, 2000 WL 310341, at *5 (S.D.N.Y. Mar. 27, 2000).

Defendant argues that Dr. Catanese should not have been permitted to give expert opinion testimony, contending that "the Court should reconsider its decision permitting Plaintiffs' [sic] damages expert to testify without formal disclosure." (D. Mem. 16.)  But the Court made no such decision; Dr. Catanese was not a damages expert.  Defendant objected before trial to Dr. Catanese's testifying as an expert, and the Court sustained this objection.  Recognizing that Dr. Catanese had not been timely disclosed as an expert, the Court ruled that he could testify not as an expert but only as a treating physician, that is, as a fact witness.  The Court made clear that his testimony about future pain and suffering should be limited to those facts relevant to his own treatment plan:

> [W]hat I am trying to do is avoid having this person be a de facto litigation expert.  And I think the best way to do that is to have him testify, essentially, about his evaluation and treatment.  And then there is going to be plenty of room for cross-examination about what treatment is or isn't taking place in a year here.
>
> But I think he can describe what he sees and what he has recommended as a treatment plan, and why.  I think that's fair.  And if the answer to why he recommends X, Y, and Z is because that's going to offer some chance of alleviating some pain, well and good.  But I don't think it is important to have him give some opinion about how much pain the plaintiff is likely to feel five years into the future, or something like that.  That seems to me to be precisely the realm of expert testimony.  The issue is, what he sees, what problems exist, and what is his recommended treatment, and why.

(Tr. 196-97.)

Defendant does not appear to contend that this ruling was in error, and Dr. Catanese's testimony in general stayed well within its terms, confining itself to his diagnosis of plaintiff's

condition and the treatment options he discussed with plaintiff. (Tr. 206-35.) He discussed the prospects for the future in terms of his advice to plaintiff; for example, when asked whether he arrived at a treatment plan, he responded that he "didn't think [plaintiff's condition] was going to improve significantly, and at this point, from a standpoint of comfort, he should try to accommodate the foot with padding, softer shoes" and the like. (Tr. 227-28.)

Defendant's objection focuses on two specific instances in which plaintiff's counsel purportedly crossed the line set forth by the Court, one during testimony and one during closing argument. In the first instance, plaintiff's counsel asked Dr. Catanese whether, "based on your evaluation of Mr. Smith, your view of the x-rays, the earlier notes and records that you reviewed, you have an opinion to a reasonable degree of medical certainty as to what Mr. Smith's prognosis for the future is?" (Tr. 233.) Dr. Catanese replied that the prognosis was "guarded," and that "he's going to have pain for the rest of his life" unless he chose a surgical procedure that had only a "50-50 chance [of] eliminat[ing] all his pain." (Id. 233-34.)

Defendant argues that this testimony was impermissible under the Court's ruling that plaintiff should not elicit testimony as to "giv[ing] some opinion about how much pain the plaintiff is likely to feel five years into the future." (Tr. 196.) The Court's ruling, however, excluded testimony regarding the *degree* of pain; nowhere did the Court direct plaintiff to avoid giving his prognosis. The statement to which defendant objects was made in the context of a description of Smith's options, which the doctor described as a choice between permanent injury and surgery with a fifty percent chance of success. This kind of choice is precisely what patients retain doctors to explain to them. There is a significant difference between noting that an injury will not heal itself — something treating physicians tell patients every day — and attempting to

quantify or otherwise describe the amount of pain a patient will suffer at some specific point in the distant future, as an expert witness might be retained to do.  In any event, treating physicians may "have an opinion as to . . . the degree of injury in the future," but "[t]hese opinions are a necessary part of the treatment of the patient [and] do not make the treating physicians experts as defined by Rule 26(b)(4)(C)."  DeRienzo v. Metro. Transit Auth. and Metro-North R. R., No. 01 Civ. 8138, 2004 WL 67479, *2 (S.D.N.Y. Jan. 15, 2004), quoting Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo.1995).  The testimony was not improper.

Defendant's second objection is to a portion of plaintiff's summation in which counsel argued that the jury should "take into account, please, the unchallenged testimony of the doctor that this was permanent and that it is progressive."  (Tr. 697-98.)  Of course, this summation was objectionable only if the testimony to which it referred was improperly admitted.  For the reasons discussed above, it was not.

Even if the testimony and argument had been objectionable, moreover, defense counsel raised no objection to either of these supposed deviations from the Court's ruling.  Indeed, nowhere at trial did defendant argue that plaintiff had elicited expert testimony, or that plaintiff's counsel had exceeded the bounds of the Court's ruling.  Defendant contends that it raised no objection because "the Court instructed both parties . . . *not* to object during testimony."  (D. Reply 3.)  No such instruction was given, as defendant is surely aware.  The Court directed the parties not to request *sidebars* unless absolutely necessary, because erroneously overruled objections requiring argument could be taken up during breaks when the jury left the courtroom:

> If you make an objection and I erroneously overrule it, if what is
> going to happen is something that will cause a mistrial, say, Gosh,
> we really need a sidebar, and we will have one. [But] . . . it had
> better be something that is an emergency, otherwise, you can

>     persuade me at the next break that I was wrong and I will strike
>     whatever was there.

(1/12/07 Tr. at 16.) The Court said nothing to forbid or even discourage objections. Defendant obviously understood this distinction; counsel made objections at various points during live testimony. (See, e.g., Tr. 253, 273.) Thus, even if there had been some erroneously admitted testimony or argument, there was no objection calling it to the Court's attention, either at the time or at the next available jury recess. Where a new trial is sought on the ground that evidence was erroneously admitted, but without contemporaneous objection, "a new trial is warranted . . . only if its admission was plain error, meaning that the error must 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" Sharkey v. Lasmo (AUL Ltd.), 55 F. Supp. 2d 279, 290 (S.D.N.Y.1999), quoting Johnson v. United States, 520 U.S. 461, 467 (1997). In this case, for the reasons discussed above, there was no such error.

Nor was there prejudice to Crown. If the defendant was surprised by Dr. Catanese's testimony, it has only itself to blame. Crown had more than a year prior to trial to attempt to find out whether Dr. Catanese's prognosis differed from the prognosis of the prior physician, but did not attempt to do so. The office notes disclosed in February 2006 indicated that Smith's "options are to live with this condition and treat it palliatively with padding and appropriate shoe gear or to try a surgical procedure which has approximately 50/50 chance of eliminating the pain," and stated, "I do not believe he will have full use of the foot in a normal fashion." (Bainton Decl. Ex. L.) Dr. Catanese's testimony at trial added little to these observations. Insofar as defendant knew in February 2006 that plaintiff's treating physician believed that the injury might well continue into the future, defendant has only itself to blame for missing the opportunity to prove otherwise.

Defendant did not seek at any point to introduce evidence contradicting plaintiff's evidence of future damages, or move for a continuance to prepare such evidence, even when it became clear at trial that a claim of continuing injury would be made.  At trial, defendant had the opportunity to impeach Dr. Catanese's conclusions, but did not do so, saying, "Doctor, you did such a good job on direct, I have no further questions." (Tr. 240.) Since the trial, moreover, defendant has had time to gather evidence refuting Dr. Catanese's conclusions, but presents nothing to suggest that, had it received an earlier expert report, it would have been able to present any evidence to dispute Dr. Catanese's testimony.  Indeed, defendant does not appear to contend that Catanese's testimony was false or misleading in any way.  In short, it appears that defendant's real objection is that the jury learned the true extent of Smith's injury.  That can hardly be described as an injustice.

### V.    Remittitur of the Damages Award

Under N.Y. C.P.L.R. § 5501(c), an award of damages must be reduced if it "deviates materially from what would be reasonable compensation." Cross v. New York City Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005) (internal quotation marks omitted).  To determine whether an award "deviates materially from what would be reasonable compensation," New York state courts look to awards approved in similar and analogous cases.  Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 425 (1996) (internal quotation marks omitted).

Plaintiff argues that the award of $1,026,000 for pain and suffering is not excessive, but fails to cite a single case supporting this view.  The award is indeed high compared to other cases in the New York courts.  See Hoerner v. Chrysler Fin. Co., 802 N.Y.S.2d 583, 585 (N.Y. App. Div. 4th Dep't 2005) (reducing award of $1,000,000 for future pain and suffering to $250,000

where "plaintiff suffers from pain and will require future surgeries due to future degenerative changes, [but where] plaintiff is not totally disabled, is able to walk without a limp, and has a functional (if imperfect) patella [(kneecap)]"); Gilliam v. Vasilis, 639 N.Y.S.2d 804, 804 (1st Dep't 1996) (reducing an award of $600,000 to $450,000 for a 63-year-old woman employed as a home attendant who fractured four metatarsal bones, resulting in a permanent limp and the use of a cane); Thomas v. 14 Rollins Street Realty Corp., 807 N.Y.S.2d 56, 57-58 (N.Y. App Div. 1st Dep't 2006) (increasing award of $100,000 for future pain and suffering to $250,000 where leg injuries resulted in some lasting pain and restrictions on activities involving repetitive rising and squatting.); Rivera v. Lincoln Ctr. for the Performing Arts, Inc., 792 N.Y.S.2d 39, 40 (1st Dep't 2005) (holding that remittitur of award for future pain and suffering in personal injury suit from $362,500 to $40,000 was excessive, and would be increased to $200,000, where an ankle injury did not satisfactorily respond to treatment, and the 25-year-old plaintiff was expected to require further major surgery and experience lasting pain); Gonzalez v. Manhattan and Bronx Surface Transit Operating Auth., N.Y.S.2d 116, 116 (N.Y. App. Div. 1st Dep't 1990) (reducing award of $1.2 million for pain and suffering to $600,000 where plaintiff suffered a "torn meniscus and cartilage damage when, in an automobile accident, both knees struck the dashboard of her vehicle," and where, "[n]otwithstanding the prospect for bilateral knee replacements, plaintiff did not suffer any loss of time at work or cessation of normal activities.").

The evidence at trial established that plaintiff's foot is seriously injured and unlikely to recover fully; plaintiff is likely to have difficulty walking for the rest of his life. The jury and the Court were able to observe firsthand the damage to plaintiff's foot firsthand and the difficulty in walking plaintiff experienced, which were clearly significant. A significant award of damages is

merited, but the figure of $1,026,000 deviates materially from what would be reasonable compensation.  Accordingly, the award for pain and suffering will be reduced to $500,000 (resulting in a total judgment of $514,664.49) unless plaintiff elects to proceed with a new trial. See Cross v. New York City Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005) ("Remittitur is the process by which a court compels [the party that prevailed at trial] to choose between reduction of an excessive verdict and a new trial.") (citation and internal quotation marks omitted).  If plaintiff does not accept the remittitur, he is entitled to a new trial.

## VI.    C.P.L.R. § 5041(e)

Finally, defendant's motion notes that under New York law, in cases where a verdict amounts to $250,000 or more, "the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments." N.Y. C.P.L.R. § 5041(e).  The parties agree that this provision applies here.  Defendant reasonably asks that the parties be given time to confer and stipulate to the form of the judgment required by § 5041(e).  This request will be granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment as a matter of law or a new trial (Doc. # 38) is denied except on the question of damages; the Court orders a remittitur of the jury's total damage award to $514,664.49.  On or before June 1, 2007, plaintiff may file with the Clerk of the Court an acceptance of the remittitur.  In the event plaintiff does not file an acceptance of the remittitur, a new trial will be scheduled by the Court.   In the event plaintiff does file an acceptance of the remittitur, the parties are directed to submit to the Court by June 8, 2007, a stipulated proposed judgment complying with N.Y. C.P.L.R. § 5041(e).

SO ORDERED.

Dated: New York, New York
      May 16, 2007

                                                                  GERARD E. LYNCH
                                                United States District Judge